1
2
3
4
5
6
7

8        **UNITED STATES DISTRICT COURT**

9        **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    IRIS MOLINA and RENE MOLINA,                CASE NO. 09-CV-00894-IEG (AJB)

12                                  Plaintiff,     **ORDER GRANTING**
                   vs.                            **DEFENDANTS' MOTION TO**
13                                                **DISMISS**

14    WASHINGTON MUTUAL BANK,
      MERITAGE MORTGAGE, NETBANK, JP            [Doc. No. 29]
15    MORGAN CHASE BANK, N.A. AS
      SUCCESSOR IN INTEREST TO
16    WASHINGTON MUTUAL, WILSHIRE
      CREDIT CORPORATION, CALIFORNIA
17    RECONVEYANCE COMPANY,
      MORTGAGE ELECTRONIC
18    REGISTRATION SYSTEM, STATE
      MORTGAGE & FINANCE, INC., ED AKEL
19    and DOES 1-20 inclusive,

20                                  Defendant.

21           Presently before the Court is Defendants JPMorgan Chase Bank, N.A. and California

22    Reconveyance Company's Motion to Dismiss Plaintiffs' Complaint.  (Doc. No. 29.)  Defendant

23    Wilshire Credit Corporation joins in the motion.  (Doc. No. 35.)  Plaintiffs filed an opposition, and

24    Defendant filed a reply.

25           The Court finds Defendant's motion suitable for disposition without oral argument pursuant

26    to Local Civil Rule 7.1(d)(1).  For the reasons stated herein, the Court GRANTS the motion to

27    dismiss.

28    //

**FACTUAL BACKGROUND**

The following facts are drawn from the Complaint.  This matter involves a loan obtained by Plaintiffs Iris Molina and Rene Molina ("Plaintiffs"), secured by property located at 39878 Millbrook Way Unit B, Murrieta, County of Riverside, California.

Plaintiffs allege Defendant State Mortgage & Finance, Inc. sold them the loan and Defendant Ed Akel was the purported loan officer.  Defendant Akel allegedly told Plaintiffs he was the Operations Manager for State Mortgage & Finance, Inc., but in fact was not even registered with the Department of Real Estate.  Defendant Akel advised Plaintiffs he could get them the "best deal" and the "best insurance rates" available on the market.  Defendant Akel also assured Plaintiffs they would receive a loan with a fixed rate for 30 years, as they had repeatedly requested.  The only financial documents Defendant Akel requested were Plaintiffs' bank statements.  Plaintiffs allege they primarily speak and read Spanish, but that the loan documents and their conversations with Defendant Akel were not translated into Spanish.

Plaintiffs consummated the loan on June 16, 2006.  According to Plaintiffs, Defendant Akel did not explain any of the documents, and simply asked them to sign and initial the documents.  Plaintiffs allege they did not receive the required documents and disclosures when the loan was consummated, as required by TILA.  The Deed of Trust identified California Title Co. as trustee and Defendant Meritage Mortgage as the lender.  Subsequently, Defendant Mortgage Electronic Registration Systems, Inc. became nominee for Meritage Mortgage and its successors and assigns.

On July 24, 2008, Defendant California Reconveyance Company ("CRC") filed a Notice of Default, and on or about October 27, 2008, CRC sent Plaintiffs a Notice of Trustee Sale.

On April 17, 2009, Plaintiffs mailed a Qualified Written Request to Defendant Washington Mutual Bank ("WAMU"), which included a demand to cancel the pending Trustee Sale and to rescind the loan under TILA.  WAMU allegedly has not responded.  Plaintiffs have sued JPMorgan Chase Bank, N.A. ("JPMorgan") as successor in interest to WAMU.

**PROCEDURAL HISTORY**

On April 28, 2009, Plaintiffs filed the Complaint.  Plaintiffs name nine defendants and set

forth ten causes of action: (1) violation of the Truth in Lending Act, (2) violation of the California Rosenthal Fair Debt Collection Practices Act, (3) wrongful foreclosure, (4) violation of the Real Estate Settlement Procedures Act, (5) breach of fiduciary duty, (6) fraud, (7) violation of California Business and Professions Code § 17200, (8) breach of contract, (9) breach of the implied covenant of good faith and fair dealing, and (10) violation of California Civil Code § 2923.5.

On November 23, 2009, Defendants JPMorgan and CRC filed this motion to dismiss the Complaint for failure to state a claim upon which relief may be granted, seeking dismissal of all ten causes of action.  (Doc. No. 29.)  On December 29, 2009, Defendant Wilshire Credit Corporation ("Wilshire") filed a notice of joinder in the motion to dismiss.[1]  (Doc. No. 35.)

**DISCUSSION**

I.      Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a) (2009).  A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001).  The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996).

To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1939 (2009) (citing Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a

---

[1] In the December 30, 2009 Order on Wilshire's notice of joinder, the Court ordered that the notice of joinder was proper to the extent Wilshire joined in the arguments raised in the Motion to Dismiss, but that the Court would not consider the new arguments raised in the notice of joinder. (Doc. No. 39.)

09cv00894

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949 (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557).

Furthermore, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citation omitted). In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526, (1983). Also, the court need not accept "legal conclusions" as true. Iqbal, 129 S.Ct. at 1949. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity." Id. at 1941.

II.    Request for Judicial Notice

In ruling on a motion to dismiss for failure to state a claim, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). A fact properly subject to judicial notice is one "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201 (2009). Accordingly, a court may consider matters of public record on a motion to dismiss, and in doing so "does not convert a Rule 12(b)(6) motion to one for summary judgment." Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by* Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111 (1991).

Defendants request judicial notice of the following documents recorded with the Riverside County Recorder's Office: (1) Deed of Trust, recorded on or about June 26, 2006; (2) Second

Deed of Trust, recorded on or about June 26, 2006; (3) Notice of Default and Election to Sell Under Deed of Trust, recorded on or about July 24, 2008; (4) Substitution of Trustee, recorded on or about October 29, 2008; and (5) Notice of Trustee's Sale, recorded on or about October 29, 2008. These documents are public records and the Court takes judicial notice of them pursuant to Federal Rule of Evidence 201.

Defendants also request judicial notice of (1) the Purchase and Assumption Agreement among Federal Deposit Insurance Organization, Receiver of Washington Mutual Bank, Henderson, Nevada ("FDIC") and JPMorgan, dated September 25, 2008, available on the FDIC's website, and (2) the Order from the Office of Thrift Supervision ("OTC") appointing the FDIC as Receiver of Washington Mutual Bank, available on OTC's website. The Court grants Defendants' request for judicial notice of these documents. Information on government agency websites has often been treated as properly subject to judicial notice." Paralyzed Veterans of Am. v. McPherson, 2008 U.S. Dist. LEXIS 69542, at *5 (N.D. Cal. Sept. 8, 2008); see also United States ex rel. Dingle v. BioPort Corp., 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) ("Public records and government documents are generally considered 'not to be subject to reasonable dispute.' This includes public records and government documents available from reliable sources on the Internet.") (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)).

III.    Analysis

    A.    JPMorgan's Assumption of Liability

As an initial matter, JPMorgan argues that Plaintiffs incorrectly sue JPMorgan as successor in interest to WAMU. JPMorgan argues that the Purchase and Assumption Agreement entered into with the FDIC establishes that JPMorgan expressly did not assume WAMU's liabilities relating to borrower claims.

On September 25, 2008, the Office of Thrift Supervision closed WAMU and appointed the FDIC as WAMU's receiver. On the same day, JPMorgan acquired certain assets and liabilities of WAMU pursuant to the Purchase and Assumption Agreement. (Def.'s Req. for Jud. Notice in Supp. of Mot. to Dismiss ("RJN"), Exhibit 6.) Section 2.5 of the agreement provides: "any liability associated with borrower claims, . . . related in any way to any loan or commitment to lend made by

the Failed Bank prior to failure, . . . are specifically not assumed by the Assuming Bank."[2]  (RJN, Exhibit 6, at 5.)  This provision establishes that JPMorgan has expressly not assumed WAMU's liabilities relating to borrower claims.  See Yeomalakis v. F.D.I.C., 562 F.3d 56, 62 (1st Cir. 2009) (finding that Section 2.5 of JPMorgan's agreement with the FDIC retained for the FDIC "any liability associated with borrower claims"); Hilton v. Wash. Mut. Bank., 2009 WL 3485953, at *2 (N.D. Cal. October 28, 2009) (same); Cassese v. Wash. Mut. Bank, 2008 WL 7022845, at *2-3 (E.D.N.Y. Dec. 22, 2008) (same).

Accordingly, any of Plaintiffs' claims arising out of JPMorgan's alleged status as successor in interest to Plaintiffs' borrower claims against WAMU must fail.

### B.     Truth in Lending Act

Plaintiffs allege violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601-1693 (2009), as well as TILA's implementing regulation (known as "Regulation Z"), 12 C.F.R. § 226.23 (2009). Regulation Z requires creditors to make certain disclosures "clearly and conspicuously in writing, in a form that the consumer may keep."  Id. § 226.17.

#### 1.     Damages Claim

##### a.     Statute of Limitations

Defendants argue that Plaintiffs' claim for damages is time-barred by the one-year statute of limitations.  Plaintiffs consummated the loan on June 26, 2006 and filed this action almost three years later on April 28, 2009.

Any action for TILA damages must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).  As a general rule, the statutory period "starts at the consummation of the [loan] transaction."  King v. California, 784 F.2d 910, 915 (9th Cir. 1986). Because any claim under Regulation Z is derivative of a TILA claim, the same statute of limitations

---

[2] Section 2.5 states in full: Borrower Claims. Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extrajudicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

applies to Regulation Z claims.   However, equitable tolling may be appropriate "in certain circumstances," such as when a borrower might not have had a reasonable opportunity to discover the fraud or nondisclosures at the time of loan consummation.  Id. at 915.  District courts have discretion to adjust the limitations period in cases where "the general rule would be unjust or frustrate the purpose of [TILA]."  Id.  The general applicability of equitable tolling often depends on matters outside the pleadings, and "is not generally amenable to resolution on a Rule 12(b)(6) motion." Supermail Cargo v. United States, 68 F.3d 1204, 1206 (9th Cir. Cal. 1995).  When determining whether the statute of limitations has run on a motion to dismiss, a court may only grant the motion "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."  Id.

In this case, Plaintiffs allege they are natives of Mexico and primarily speak and read Spanish, but none of the documents or conversations relating to the loans were translated into Spanish. (Compl. at 4:27-5:4.) Reading the Complaint liberally, the Court finds applicability of equitable tolling in this case depends on factual questions not clearly resolved in the pleadings, specifically, when Plaintiffs had the "reasonable opportunity" to discover the allegedly deficient disclosures.  Accordingly, Plaintiffs have pled sufficient facts to support the applicability of equitable tolling.

### b.   TILA Violations

Plaintiffs allege Defendants violated TILA by failing to provide required disclosures and notices, placing prohibited terms into the loans, and failing to disclose all finance charge details and the annual percentage rate.   (Compl. at 10:8-14.)  Plaintiffs allege all Defendants are "creditors" as defined by the statute. (Compl. at 9:23-24.)

Civil liability under TILA applies to creditors.[3]  See 15 U.S.C. § 1640(a).  In addition, the assignee of a creditor may be liable "if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement."  Id. § 1641(a).  "[A] violation apparent on the face

---

[3]A "creditor" is defined as  "a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement."  15 U.S.C. § 1602(f).

of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." Id. Liability does not extend to a loan servicer as an assignee "unless the servicer is or was the owner of the obligation." Id. § 1641(f).

Defendants argue that Plaintiffs impermissibly lump together all defendants in their allegations, and that the allegations are conclusory. The Court agrees that Plaintiffs' blanket allegation that all Defendants are "'creditors" and therefore had a duty to provide the required disclosures is conclusory. Plaintiffs' only allegation as to JPMorgan's role in the loan transaction is that JPMorgan is the successor in interest to WAMU, and Plaintiffs mailed a Qualified Written Request to WAMU. (Compl. 6:4-7.) Similarly, Plaintiffs' only allegations relating to CRC's role in the loan transaction are that CRC sent Plaintiffs a Notice of Trustee Sale and that CRC claimed it was the trustee. (Compl. at 8:19-20, 12:26-27.) The Complaint contains no allegations relating to Wilshire's role in the loan transaction.

Because the Court cannot assume Plaintiffs can prove facts that they have not alleged, Plaintiffs' allegations fail to establish that Defendants are subject to liability under TILA. See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526, (1983). Accordingly, the Court dismisses without prejudice the damages claim under TILA.

                        2.     Rescission Claim

Plaintiffs acknowledge in their opposition that rescission under TILA is not available for purchase money loans. (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 10:17-18.) Rather, Plaintiffs argue they are entitled to rescission due to fraud and a lack of "meeting of the minds" at the inception of the loan. (Pl.'s Opp'n at 19-20.)

Therefore, the Court dismisses with prejudice Plaintiffs' rescission claim under TILA.

    C.     California Rosenthal Act

Plaintiffs allege Defendants violated California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788-1788.33 (2009), by threatening to take actions not permitted by law, including: "foreclosing upon a void security interest; foreclosing upon a note of which they

1   were not in possession nor otherwise entitled to payment; falsely stating the amount of a debt;

2   increasing the amount of a debt by including amounts that are not permitted by law or contract; and

3   using unfair and unconscionable means in an attempt to collect a debt."  (Compl. at 11:22-27.)

4          Defendants argue that the act of foreclosure on the subject property pursuant to Plaintiffs'

5   default on the Deed of Trust does not constitute "debt collection" under the RFDCPA.  The Court

6   agrees that Defendants' foreclosure as security on a debt cannot form the basis for an RFDCPA claim.

7   See, e.g., Izenberg v. ETS Servs., LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008), Blanco v. Am.

8   Home Mortg. Servicing, Inc., 2009 WL 4674904, at *4 (E.D. Cal. Dec. 4, 2009).

9          The remaining allegations also fail because Plaintiffs do not identify the sections of the

10  RFDCPA that are allegedly violated nor allege Defendants are "debt collectors" subject to the statute.

11         Accordingly, the Court dismisses without prejudice Plaintiffs' claim under the RFDCPA.

12         D.     Wrongful Foreclosure

13         Plaintiffs' Complaint alleges wrongful foreclosure based on two theories.  First, Plaintiffs

14  allege Defendants are not in possession of the Note and cannot produce the Note and therefore are not

15  "person[s] entitled to enforce" the security interest on the property, as that term is defined in

16  California Commercial Code § 3301.  Defendants argue that there is only liability for "wrongful

17  foreclosure" where the property was fraudulently or illegally sold under a power of sale in a deed of

18  trust.            Plaintiffs' first argument fails.  Neither possession nor production of the original

19  promissory note is required in order to initiate a nonjudicial foreclosure.  See, e.g., Cal. Civ. Code

20  2924; Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1186 (N.D. Cal. 2009);

21  Blanco v. Am. Home Mortg. Servicing, Inc., 2009 WL 4674904, at *9 (E.D. Cal. Dec. 4, 2009); Wood

22  v. Aegis Wholesale Corp., 2009 WL 1948844, at *4 (E.D. Cal. July 6, 2009).  Courts have reasoned

23  that the detailed non-judicial foreclosure procedures provided by California Civil Code §§ 2924-2924k

24  are exhaustive, and these procedures do not require possession and production of the note:

25             The comprehensive statutory framework established to govern nonjudicial
               foreclosure sales is intended to be exhaustive . . . . It includes a myriad of rules
26             relating to notice and right to cure. It would be inconsistent with the comprehensive
               and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate
27             another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

28
    Moeller v. Lien, 30 Cal. Rptr. 2d 777 (1994).  Plaintiffs' second theory of wrongful foreclosure is that

                                              - 9 -                                    09cv00894

1    Defendants "failed to properly record and give notice of the Notice of Default" as required by

2    California Civil Code § 2923.5(b).  This theory fails because Plaintiffs' allegation is directly

3    controverted by the Notice of Default, recorded by CRC on July 24, 2008.  (RJN, Exhibit 3.)

4           Accordingly, the Court grants the motion to dismiss Plaintiffs' claim for wrongful foreclosure.

5           E.    Real Estate Settlement Procedures Act

6           Plaintiffs allege Defendants violated the Real Estate Settlement Procedures Act ("RESPA"),

7    12 U.S.C. §§ 2601-2617 (2009), which protects consumers from unnecessarily high settlement charges

8    and abusive mortgage practices in connection with federally related mortgage loans.  See 12 U.S.C.

9    § 2601 (2009).

10                 1.    Failure to Respond to Plaintiffs' Qualified Written Request

11          Generally, if the loan servicer of a federally related mortgage loan receives a qualified written

12   request ("QWR") from the borrower for information relating to the servicing of such loan, the loan

13   servicer shall provide a written response within 20 days.  Id. § 2605(e)(1)(A).  A QWR is defined as:

14          a written correspondence, other than notice on a payment coupon or other payment
            medium supplied by the servicer, that --

15
            (i) includes, or otherwise enables the servicer to identify, the name and account of
16          the borrower; and

17          (ii) includes a statement of the reasons for the belief of the borrower, to the extent
            applicable, that the account is in error or provides sufficient detail to the servicer
18          regarding other information sought by the borrower.

19
     Id. § 2605(e)(1)(B).  When the loan servicer receives a QWR, it must either correct the borrower's
20
     account, or, after conducting an investigation, provide the borrower with a written explanation of: (1)
21
     why the loan servicer believes the account is correct, or (2) why the requested information is
22
     unavailable.  See id. § 2605(e)(2).
23
            Plaintiffs concede they do not know which of the Defendants was actually the servicer of the
24
     loan at any given time.  (Compl. at 14:6-10.)  However, Plaintiffs allege they made a QWR to WAMU
25
     on April 17, 2009 which included a demand to cancel the pending Trustee sale and to rescind the loan
26
     under TILA.  (Compl. at 6:4-7.)  Plaintiffs allege Defendants failed to provide a written explanation
27
     or response to Plaintiffs' QWR.  (Compl. at 14:12-14.)  Defendants argue that WAMU had become
28
     defunct on September 25, 2008 and could not have responded to the alleged QWR, and therefore

JPMorgan could not have responded either.  Defendants' assertion that JPMorgan could not have responded does not resolve the question whether JPMorgan was obligated to respond.  In any event, Plaintiffs' claim fails for the reasons set forth below.

Defendants argue that Plaintiffs fail to allege pecuniary loss.  Section 2605(f)(1)(A) provides that whoever violates RESPA is liable for "any actual damages to the borrower as a result of the failure." Numerous courts have read Section 2605 as requiring a showing of pecuniary damages in order to state a claim.  See, e.g., Shepherd v. Am. Home Mortg. Servs., Inc., L 4505925, at *3-4 (E.D. Cal. Nov. 20, 2009); Reynoso v. Paul Fin., LLC, 2009 WL 3833298, at *7 (N.D. Cal. Nov. 16, 2009); Llaban v. Carrington Mortg. Servs., LLC, 2009 WL 2870154, at *4 (S.D. Cal. Sept. 3, 2009). But "[c]ourts have interpreted this requirement liberally."  Yulaeva v. Greenpoint Mortg. Funding, Inc., 2009 WL 2880393, at *15 (E.D. Cal. Sept. 3, 2009) (plaintiff sufficiently pled actual damages where plaintiff alleged she was required to pay a referral fee prohibited under RESPA); see also Hutchison v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) (plaintiffs alleged they suffered negative credit ratings as a result of RESPA violations).  Here, Plaintiffs allege that they "have suffered and continues [sic] to suffer damages and costs of suit" as a result of Defendants' alleged failure to comply with RESPA. (Compl. 14:18-19.)  This allegation is conclusory, and Plaintiffs have failed to sufficiently plead pecuniary loss.

Plaintiffs cannot state a claim against CRC and Wilshire for the additional reason that Plaintiffs do not allege they sent a QWR to CRC or Wilshire or that these defendants are loan servicers covered by RESPA.

### 2.  Other RESPA Violations

Plaintiffs further allege Defendants violated RESPA at the time of closing on the sale of the property by failing to comply with disclosure requirements, and have engaged in a "pattern or practice of non-compliance" with Section 2605.  (Compl. at 14:11-12, 15-17.)  These allegations are conclusory  in that they fail to identify what disclosure requirements were violated and fail to set forth facts relating to the alleged "pattern or practice of non-compliance."

Accordingly, the Court grants Defendants' motion to dismiss the RESPA claim.

//

F.      Breach of Fiduciary Duty

Plaintiffs concede in their opposition that this claim is inapplicable to Defendants.  Therefore, the Court dismisses this claim with prejudice.

G.      Fraud

Plaintiffs' sixth cause of action is for fraud.  Under California law, there are five elements of common law fraud: (1) misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage.  Gil v. Bank of Am., N.A., 42 Cal. Rptr. 3d 310, 317 (Ct. App. 2006).  Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiff to allege circumstances constituting the alleged fraud that are "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)).  Plaintiff must allege "the who, what, when, where, and how" of the misconduct charged.  Vess, 317 F.3d at 1106.  "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false." Id. (quoting Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir. 1994)).

Defendants argue that Plaintiffs' fraud allegations fail to meet the particularity requirement of Rule 9(b) because the only allegations of fraud relate to the conduct of Defendants Akel, State Mortgage & Finance, Inc., and Meritage in the execution of the loan.  The Court agrees that Plaintiffs fail to sufficiently plead that JPMorgan, CRC, or Wilshire made any misrepresentation in connection with the loan.  Plaintiffs' fraud allegations relate only to the original loan transaction.  Specifically, Plaintiffs allege Defendant Akel made assurances to Plaintiffs that they would receive a loan with a fixed rate for 30 years, which he knew were false and would induce them to accept the loan.  (Compl. at 5:7-10.)  Plaintiffs also allege Defendants have a practice of approving loans to unqualified borrowers.  (Compl. at 6:16-23.)  Again, this allegation relates only to lending activities.  The Court does not accept Plaintiffs' conclusory allegation that "each of the Defendants was an agent and employee of each of the remaining Defendants" as true.

The only allegation of a representation made by CRC is the allegation that "in pursuing the

non-judicial foreclosure, Defendants represented that they have the right to payment under the note." Assuming this is an allegation of fraud, it is not pled with particularity.

Accordingly, the Court dismisses without prejudice Plaintiffs' cause of action for fraud.

H       California Business and Professions Code § 17200

Plaintiffs allege Defendants violated California's unfair competition statute, which prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 (2009). Because Section 17200 is written in the disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 83 Cal. Rptr. 2d 548, 561 (Cal. 1999). By proscribing "unlawful" acts or practices, "Section 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable." Id. at 539-40.

The definition of "unfair" acts or practices in consumer actions is uncertain.  There are two opposing lines of California appellate court opinions. See, e.g., Morgan v. Harmonix Music Sys, Inc., 2009 WL 2031765, at *4 (N.D. Cal. July 7, 2009) (noting the split in authority); Bardin v. DaimlerChrysler Corp., 39 Cal. Rptr. 3d 634, 639-48 (Ct. App. 2006) (same).  "One line defines 'unfair' as prohibiting conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." Id. (citing Smith v. State Farm Mut. Auto. Ins. Co. 113 Cal. Rptr. 2d 399, 415 (Ct. App. 2001).  "The other line of cases holds that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." Bardin, 39 Cal. Rptr. 3d at 626 (citing Scripps Clinic v. Superior Court, 134 Cal. Rptr. 2d 101, 116 (Ct. App. 2003)).

The term "fraudulent" as used in Section 17200 "does not refer to the common law tort of fraud" but only requires a showing members of the public "are likely to be deceived." Puentes v. Wells Fargo Home Mortg., Inc., 72 Cal. Rptr. 3d 903, 909 (Ct. App. 2008) (quoting Saunders v. Superior Court, 33 Cal. Rptr. 2d 438, 441 (Ct. App. 1994).  "Unless the challenged conduct 'targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer.'" Puentes, 72 Cal. Rptr. 3d at 909 (quoting Aron v. U-Haul Co. of Cal., 49 Cal. Rptr. 3d

1    555, 562 (Ct. App. 2006)).

2        Plaintiffs allege "Defendants committed unlawful, unfair, and/or fraudulent business practices,

3    as defined by California and Professions Code section 17200, by engaging in the unlawful, unfair, and

4    fraudulent business practices alleged herein." (Compl. at 17:1-4.)  Defendants argue that Plaintiffs

5    fail to provide specific factual allegations to support their claims.  The Court agrees that Plaintiffs fail

6    to allege facts demonstrating how JPMorgan, CRC, or Wilshire's actions were "fraudulent," "immoral,

7    unethical, oppressive, unscrupulous," or "substantially injurious to consumers."  Plaintiffs' claim

8    therefore must rest on Defendants' "unlawful" acts.  The Court interprets Plaintiffs' allegations as

9    identifying the other causes of action in the Complaint as the "borrowed" violations of law.  As set

10   forth in this Order, however, Plaintiffs fail to sufficiently plead any of their causes of action.

11   Accordingly, Plaintiffs' claim under Section 17200 is dismissed without prejudice.

12       I.       Breach of Contract

13       Plaintiffs concede in their opposition that this claim is inapplicable to Defendants.  Therefore,

14   the Court dismisses this claim with prejudice.

15       J.       Breach of Implied Covenant of Good Faith and Fair Dealing

16       Plaintiffs concede in their opposition that this claim is inapplicable to Defendants.  Therefore,

17   the Court dismisses this claim with prejudice.

18       K.       California Civil Code § 2923.5

19       Plaintiffs allege Defendants violated California Civil Code § 2923, which requires a

20   mortgagee, trustee, beneficiary, or authorized agent to contact the borrower to explore options to avoid

21   foreclosure before filing a notice of default. Cal. Civ. Code § 2923.5(a)(1) (2009).  Section 2923.5(b)

22   requires the notice of default to include a declaration that the mortgagee, trustee, beneficiary, or

23   authorized agent contacted or tried with due diligence to contact the borrower.  Id. § 2923.5(b).

24       Plaintiffs allege Defendants failed to contact and assess Plaintiffs' financial situation and

25   Defendants failed to explore options to avoid foreclosure. (Compl. at 20:2-3.)  Plaintiffs also allege

26   Defendants failed to include a declaration in the Notice of Default outlining their due diligence in

27   contacting them. (Compl. at 20:4-6.)

28       However, these requirements are inapplicable when the notice of default was recorded prior

- 14 -                                                                        09cv00894

1    to the date of the statute's enactment on September 6, 2008.  Section 2923.5(c) provides:

2            If a mortgagee, trustee, beneficiary, or authorized agent had already filed the notice
             of default prior to the enactment of this section and did not subsequently file a notice
3            of rescission, then the mortgagee, trustee, beneficiary, or authorized agent shall, as
             part of the notice of sale filed pursuant to Section 2924f, include a declaration that
4            either:

5            (1) States that the borrower was contacted to assess the borrower's financial situation
             and to explore options for the borrower to avoid foreclosure.
6
             (2) Lists the efforts made, if any, to contact the borrower in the event no contact was
7            made.

8    Id. § 2923.5(c).   In this case, CRC filed the Notice of Default on July 24, 2008, before the date of the

9    statute's enactment, and therefore was not required to include a declaration of due diligence in the

10   notice of default.  (RJN, Exhibit 3.)  Plaintiffs do not allege the notice of sale was deficient under

11   Section 2923.5(c).[4] Accordingly, the Court grants Defendants' motion to dismiss this claim.

12           This claim fails as to JPMorgan and Wilshire for the additional reason that Plaintiffs do not

13   allege either defendant is a mortgagee, trustee, beneficiary, or authorized agent, nor do Plaintiffs

14   allege either defendant participated in the Notice of Default or foreclosure sale.

15                                              **CONCLUSION**

16           For the foregoing reasons, the Court grants the motion to dismiss Plaintiffs' Complaint against

17   Defendants JPMorgan, CRC, and Wilshire.  Plaintiffs' causes of action for rescission under TILA,

18   breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair

19   dealing are DISMISSED WITH PREJUDICE, and the remaining claims are DISMISSED WITHOUT

20   PREJUDICE.

21   //

22   //

23   _____

24           [4]Defendants argue that they complied with Section 2923.5(c) and submit the Notice of
     Trustee's Sale, recorded on October 28, 2009, which states:  "In compliance with California Civil
25   Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares that it has contacted
     the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that
26   it has made efforts to contact the borrower(s) to assess their financial situation and to explore options
     to avoid foreclosure by one of the following methods; by telephone, United States mail; either 1st
27   class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting."
     (RJN, Exhibit 5.)
28           Defendants also argue that Civil Code 2923.5 does not provide borrowers with a private cause
     of action.  Because the district courts in California have consistently adjudicated private claims for
     violation of 2923.5 and Defendants point to no case to the contrary, the Court rejects this argument.

1    Plaintiffs may file the amended complaint **no later than 20 days** from the filing date of this

2  order.

3    **IT IS SO ORDERED.**

4

5  DATED:  January 29, 2010

6

7  IRMA E. GONZALEZ, Chief Judge
   United States District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09cv00894